The ESTATE OF Leslie GEORGE, deceased, by Betty GEORGE, Personal Representative, Plaintiff,

v.

State of MICHIGAN, Michigan Department of State Police, State Trooper Greg Cook and State Trooper Phillip Duplessis, Defendants.

No. 00–CV–72153–DT.

United States District Court, E.D. Michigan, Southern Division.

Feb. 8, 2001.

Evan P. Shaw, Southfield, MI, for Plaintiff.

Mark E. Donnelly, A.A.G., Michigan Attorney General's Office, Tort Defense Div., Lansing, MI, for Defendants.

## OPINION

DUGGAN, District Judge.

On May 11, 2000, Plaintiff filed a seven-count complaint against Defendants State of Michigan, Michigan Department of State Police, State Trooper Greg Cook, and State Trooper Phillip Duplessis. The Counts are entitled: "Negligence/Gross Negligence of State Police Troopers and Michigan Department of State Police" (Count I), "Negligence/Gross Negligence of State Police Troopers Cook and Duplessis" (Count II), "Negligence/Gross Negligence of State of Michigan and Michigan Department of State Police" (Count III), "Violation of Ministerial Duties" (Count IV), "Survival Action" (Count V), "Violation of 42 U.S.C. § 1983: Constitutional Deprivation: Defendants Cook and Duplessis" (Count VI), and "Violation of 42 U.S.C. § 1983: Constitutional Deprivation: Defendants State of Michigan and Michigan Department of State Police" (Count VII). This matter is currently before the Court on Defendants' motion for summary judgment. The Court entertained oral argument on February 6, 2000. For the reasons set forth below, Defendants' motion for summary judgment shall be granted.

### Background

Without doubt, the facts of this case are tragic. On May 25, 1998, decedent Leslie George ("George"), and her front-seat passenger, Shampyane Robinson ("Robinson"), were driving on the northbound John C. Lodge freeway. Michigan State Troopers Greg Cook ("Cook") and Phillip Duplessis ("Duplessis") were also traveling on the northbound John C. Lodge freeway, on an enhanced patrol to deter drunk drivers. (Duplessis Dep. at 58). Cook was driving the marked Michigan State police vehicle, and Duplessis was a passenger. (Cook Dep. at 35–36).

Cook testified that erratic driving drew his attention to George's vehicle. (Id. at 36). Cook states that George was excessively changing lanes without activating her blinker, and was driving between 80 and 90 miles per hour. (Id. at 36–37). After following George's vehicle for approximately five to six miles, Cook activated the patrol car's lights to effect a patrol stop on George's vehicle at approximately 2:00 a.m.. (Id. at 35, 37). Realizing the patrol car was behind her, George preceded to drive in the right lane for a short distance, and then exited the freeway at the Seven Mile Road exit ramp. (Id. at 38).

Cook states that George stopped her vehicle on the northbound service drive, a few hundred feet north of the exit ramp and south of Seven Mile Road on the east side curb. (Id. at 38–39, 43). Duplessis testified that George pulled her vehicle over approximately 15 yards from the exit ramp. (Duplessis Dep. at 26–27). In any event, Cook pulled the patrol car up behind George's vehicle by about three to six feet. (Cook Dep. at 43). He also positioned the car approximately two feet to the left of George's vehicle to give the officers a "safety corridor" to approach the vehicle. (Id.).

Cook approached the vehicle from the driver's side, while Duplessis approached the vehicle from the passenger side. (Id. at 44). Cook advised George of the nature of the stop, and asked her if she had been drinking. (Id. at 44–45). When George responded that she had not been drinking, Cook asked her why her eyes were "so glassy and watery." (Id. at 45). George responded that she was taking some medication for an infection. (Id ). Suspecting

that she had probably been drinking, Cook asked George to step from the vehicle so he could conduct some sobriety tests, and George complied. (*Id.* at 50).

While George was out of her vehicle to conduct the sobriety test with Cook, a vehicle exited the freeway at an excessive speed[1], went out of control, and started sliding sideways rapidly toward Cook and George. (*Id.* at 66–68). Cook states that he screamed and tried to grab George as he ran between his patrol car and George's vehicle and into the service drive. (*Id.*). Cook estimated that only one or two seconds elapsed from when he first noticed the out of control vehicle and he turned to run. (*Id.* at 68–69). The out of control vehicle, driven by Dwight Dudley, not a party to this lawsuit, struck and killed George.[2] Dudley's vehicle did not strike the patrol car or George's vehicle. (*Id.* at 72–73, 74).

On May 11, 2000, Plaintiff filed this action, naming the State of Michigan, the Michigan Department of State Police, and State Troopers Cook and Duplessis as Defendants. Plaintiff's complaint indicated that suit was being brought against State Troopers Cook and Duplessis under both their individual and official capacities.

As discussed supra, Plaintiff filed a seven-count complaint against Defendants. However, many of the counts are no longer at issue. In response to Defendants' motion for summary judgment, Plaintiff admits that its claims against the State of Michigan and the Michigan State Police are barred by Eleventh Amendment immunity. (*See* Defs.' Mot. for Summ.J. at 1 ¶ 2; Pl.'s Resp. at 2 ¶ 2). Plaintiff also admits that its official or representative capacity claims against Defendants Cook and Duplessis are barred by Eleventh

Amendment Immunity. (*See* Defs.' Mot. for Summ.J. at 1 ¶ 4; Pl.'s Resp. at 2 ¶ 4). Plaintiff further admits that Counts IV and V fail to state claims upon which relief can be granted under either state or federal law. (*See* Defs.' Mot. for Summ.J. at 2 ¶ 10; Pl.'s Resp. at 2 ¶ 10). Accordingly, the only Counts at issue for purposes of this motion are: "Negligence/Gross Negligence of State Police Troopers Cook and Duplessis" (Count II), and "Violation of 42 U.S.C. § 1983: Constitutional Deprivation: Defendants Cook and Duplessis" (Count VI).

### Standard of Review

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). When determining whether there is a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Although [the nonmoving party] is entitled to a review of the evidence in the light most favorable to him or her, the nonmoving party is required to do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (quoting, *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356).

---

1. A witness at the scene, indicated that "the car came off the freeway at 100 m.p.h." (Statement of Heath Bolden).

2. The post-mortem toxicology examination indicated George's blood alcohol level was negative. (*See* Pl.'s Reply Br., Ex. 6 at 2).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting FED.R.CIV.P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

### Discussion

#### I. *Count VI: Plaintiff's § 1983 Claim*

Defendants contend that they are entitled to summary judgment on Plaintiff's § 1983 claim because there is no genuine issue of material fact that Defendants' actions in conducting a lawful traffic stop did not constitute a state created danger under the Fourteenth Amendment, i.e., that Defendants' conduct did not constitute deliberate indifference to George's well-being. Defendants also contend that summary judgment is appropriate as to Plaintiff's § 1983 claim because Defendants are entitled to qualified immunity.

■ "When a plaintiff alleges that state actors violated substantive due process by placing him at risk of harm from a third party, he must demonstrate, first, that the defendants owed him a duty not to subject him to danger and, second, that the defendants violated this duty by exhibiting deliberate indifference to the plaintiff's well being." *Davis v. Brady*, 143 F.3d 1021, 1027 (6th Cir.1998). "When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago County DSS*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 1005, 103 L.Ed.2d 249 (1989). Furthermore, the Sixth Circuit has indicated that language in *DeShaney* "stands for the proposition that 'a duty to protect can arise in a noncustodial setting if the state does anything to render an individual more vulnerable to danger.' " *Davis*, 143 F.3d at 1025 (quoting *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir.1994)).

■ Assuming that Defendants owed George a duty not to subject her to danger, Plaintiff must establish that Defendants violated this duty by exhibiting deliberate indifference to George's well-being. The Supreme Court defined the term "deliberate indifference" in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). An official acts with deliberate indifference when he "knows of and disregards an excessive risk ... to health or safety." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff's claim that Defendants were deliberately indifferent to George's well-being while George was in their "custody," is based upon the location where they positioned George to conduct the field sobriety test. With respect to where Cook and George were positioned for the field sobriety test when the accident took place, Cook's deposition reflects the following:

Q. Okay. And did you tell her where to go to perform the field sobriety test?

A. I basically escorted her to a position or a position on the roadway where I felt it was safe to conduct a sobriety test which was on the passenger's side of the patrol car right near the passenger's side front tire

or near the end of the, the fender off the roadway.

.　.　.　.　.

Q. So, excuse me, you were five feet away or so from the rear?

A. Yeah, at least five or six feet from the back of her car.

Q. Okay.

A. And I, I already indicated we were nearest the right front fender or passenger side of the patrol car off the roadway.

Q. When you say off the roadway how far were you from the police vehicle itself?

A. Probably at least three feet or more.

Q. Would that have been still on that, the lane of traffic that you had stopped her in or were you up over the curb on the grass or where were you?

A. We were off the roadways meaning we were not on the travel portion of the roadway at all.

Q. Okay.

A. We would have been off the road, two to three feet off the road.

Q. Okay.

A. Meaning we weren't on the road.

(Cook Dep. at 62–64).

In discussing the location of Cook and George during the sobriety test, Duplessis gave the following testimony:

Q. You told me that you believe that the sobriety exam was taking place on the sidewalk to the east of the rear end of the patrol vehicle. Do you remember seeing Officer Cook and the driver walk to that location?

A. I don't remember seeing them walk to that location. I do remember seeing them at that location to the east of the patrol car on the sidewalk.

Q. Again, that would have been to the rear of the trooper vehicle?

A. Somewhere around the rear. Not necessarily behind it.

(Duplessis Dep. at 46).

Plaintiff contends that this testimony shows that "A discrepancy exists as to where, in fact, the sobriety examination was being conducted." (Pl.'s Resp. at 3.) Specifically, plaintiff points to the fact that in Officer Cook's first answer, he stated that he escorted her to a position "on the roadway." However, in this Court's view, a fair reading of Officer Cook's testimony as set forth above, clearly indicates that he was off the roadway "five or six feet from the back of the car" and "nearest the right front fender or passenger side of the patrol car." Furthermore, Officer Duplessis' deposition testimony does not contradict Officer Cook's testimony. He simply testified that the sobriety exam was taking place "east of the patrol car on the sidewalk," "Somewhere around the rear. Not necessarily behind it."

Plaintiff offers no competent evidence to refute the location of the sobriety test as testified to by Officer Cook.[3]

Plaintiff's argument that Defendants acted with deliberate indifference relies on *Davis*. In that case, Davis was arrested and taken to a police station. When the

---

**3.** Plaintiff refers to an unsworn statement of passenger Robinson, attached to Plaintiff's Response to Defendant's motion for summary judgment. However, such a document may not be considered by this Court in evaluating a motion for a summary judgment. Rule 56 requires that a party demonstrate that a genuine issue of fact exists "by affidavits, depositions, answers to interrogatories, and admissions on file." *See* FED.R.CIV.P. 56. Robinson's unsworn statement is not competent evidence which this Court may consider.

jail facility turned out to be full, the officers allegedly abandoned Davis in an inebriated condition on a dark, busy, unfamiliar highway, where he was subsequently hit by an automobile. The Sixth Circuit concluded that taking Davis into custody triggered the officers' duty to protect Davis. *Davis,* 143 F.3d at 1027. The court also concluded that the officers violated this duty when they exhibited deliberate indifference to Davis' well being by their actions, stating:

> In the present case, Davis' complaint, as well as the evidence in the record, when read in the light most favorable to Davis, supports a claim that the Defendant officers acted with deliberate indifference to the threat of injury to him. They knew, or reasonably should have known, that Davis was drunk and unable to care for himself. Independent witnesses testified under oath that Davis was staggering after the Defendant Officers released him, slurring his words, seemed drunk, and could hardly stand up ... a toxicologist placed his blood alcohol level at the time of the improper police release at approximately .20%. At such a level, expert testimony indicated Davis would have had perception impairment, disorientation, confusion, and lack of coordination. Nevertheless, the Defendant Officers chose to act affirmatively to place Davis in harm's way.

*Davis* at 143 F.3d at 1026–1027.

The conduct of Defendants, even when viewed in a light most favorable to Plaintiff, falls far short of the conduct of the police officers in *Davis* which the Court found to constitute "deliberate indifference." While the conduct at issue in this case might possibly rise, to the level of negligence, it does not constitute deliberate indifference, i.e., that Officers Cook and/or Duplessis [4] were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that either officer also drew that inference. *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979. Having concluded that there is no genuine issue of material fact that Defendant officers' conduct did not amount to "deliberate indifference," this Court concludes that there was no constitutional violation. If no constitutional violation occurred, Defendants are entitled to the defense of qualified immunity. ("The initial inquiry in any qualified immunity analysis involves a determination of whether a constitutional violation occurred.") *See Buckner v. Kilgore,* 36 F.3d 536, 539 (6th Cir.1994).

 However, even if an issue of fact existed as to whether or not Defendants' conduct resulted in a constitutional violation, that would not preclude the availability of qualified immunity. A police officer who is performing a discretionary activity is "shielded from liability for civil damages insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "The issue of whether an official is entitled to qualified immunity is a legal question which must be determined by the court." *See Garvie v. Jackson,* 845 F.2d 647, 649 (6th Cir.1988).

 Because Plaintiff seeks to hold Defendants liable in their individual capac-

---

**4.** Neither Plaintiff or Defendants' counsel addressed the role of Duplessis in this case. Nevertheless, the Court notes that Cook was the driver of the vehicle, and was also the officer who removed George from the car and chose the position for the field sobriety test.

As none of the conduct at issue in this case involved Duplessis, the Court is satisfied that Duplessis would be entitled to summary judgment on Counts II and VI regardless of the outcome as to Cook.

ities under 42 U.S.C. § 1983, Plaintiff "must show not only that the officers' actions were unconstitutional, but also that they should have known at that time that they were violating [George's] rights." *Davis*, 143 F.3d at 1024. "For a right to be 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right." *Durham v. Nu'man*, 97 F.3d 862 (6th Cir. 1996). "A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred." *Id.* (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988)). Furthermore, "[f]or qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Cope v. Heltsley*, 128 F.3d 452 (6th Cir.1997) (quoting *Lassiter v. Alabama A & M Univ. Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994)) (emphasis in original).

 A police officer is entitled to qualified immunity unless, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that [his conduct was lawful]; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The qualified immunity standard gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 537, 116 L.Ed.2d 589. The Court does not believe that Plaintiff has satisfied its burden of establishing that Defendants knew or reasonably should

have known that their conduct in performing a field sobriety test in the location chosen violated clearly established constitutional rights of which a reasonable person would have known. Defendants are therefore entitled to entry of summary judgment on the grounds of qualified immunity.

## II. *Count II: State Law Tort Claim*

Defendants claim that Plaintiff's state law claim against Defendants is barred by public employee immunity. MICH.COMP. LAWS § 691.1407(2) provides, in pertinent part:

> ... each ... employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the ... employee, or member while in the course of employment or service ... while acting on behalf of a governmental agency if all of the following are met: (a) the ... employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority; (b) the governmental agency is engaged in the exercise or discharge of a governmental function. (c) the ... employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Plaintiff does not dispute that in this case, Defendants meet conditions (a) and (b). However, Plaintiff, alleging Defendants were "grossly negligent," contends that Defendants do not meet condition (c) in the above statute.

 Defendants contend that Plaintiff's complaint does not describe any gross negligence of the defendants, and also take the position that Defendants meet condi-

tion (c) because Plaintiff cannot establish that Defendants' conduct was *the* proximate cause of George's injuries. The Michigan Supreme Court has determined that "the phrase 'the proximate cause' as used in the employee provision of the governmental immunity act, M.C.L. § 691.1407(2); MSA 3.996(107)(2), means the one most immediate, efficient, and direct cause preceding an injury, not 'a proximate cause.'" *Robinson v. City of Detroit,* 462 Mich. 439, 613 N.W.2d 307 (2000).

> "... we hold that the officers in question are immune from suit in tort because their pursuit of the fleeing vehicles was not, as a matter of law, "the proximate cause" of the injuries sustained by the plaintiffs. The one most immediate, efficient and direct cause of the Plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles."

*Id.* at 462, 613 N.W.2d 307.

Defendants contend that "[i]n this case, there is no question that the most immediate and the most direct and the most efficient cause of Ms. George's death was the driver that struck her." (Defs.' Mot. for Summ.J. at 13). This Court agrees. Because any conduct of Defendants in this case was not "the proximate cause," i.e., the one most immediate, efficient, and direct cause, of George's injuries, Defendants meet condition (c). Accordingly, Defendants are entitled to governmental immunity under Mich.Comp.Laws § 691.1407(2).

### Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is granted.

A Judgment consistent with this Opinion shall issue forthwith.