736 N.W.2d 574 (2007)
Katherine M. ERNSTING, Plaintiff-Appellant,
v.
AVE MARIA COLLEGE, Defendant-Appellee.
Docket No. 265187.
Court of Appeals of Michigan.
Submitted February 8, 2006, at Lansing.
Decided March 6, 2007, at 9:00 a.m.
Released for Publication June 21, 2007.
*577 Sommers Schwartz, P.C. (by Joseph A. Golden), Southfield, for the plaintiff.
Pear Sperling Eggan & Daniels, P.C. (by Karl V. Fink, Francyne Stacey, and Claudia Rast), Ann Arbor, for the defendant.
Before: WILDER, P.J., and ZAHRA and DAVIS, JJ.
WILDER, P.J.
In this action brought under the Michigan Whistleblowers' Protection Act (WPA), MCL 15.361 et seq., plaintiff appeals as of right the order granting defendant's motion for summary disposition under MCR 2.116(C)(8) and (10). We reverse.

I
From September 10, 2001, to September 2003, plaintiff was employed by defendant as its director of public relations until her placement as special assistant to the president of Ave Maria College. She served in this position until her employment was terminated in July 2004. In a single-count complaint alleging wrongful termination, plaintiff alleged that defendant violated the WPA by terminating her employment in response to her reports and participation in a United States Department of Education (DOE) investigation regarding defendant's administration of title IV student financial assistance programs during the 2000 to 2001, 2001 to 2002, and 2002 to 2003 award years.
Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). Following a hearing, the trial court granted defendant's motion. Rejecting plaintiff's reliance on Jacobson v. Parda Fed. Credit Union, 457 Mich. 318, 577 N.W.2d 881 (1998), and Dolan v. Continental Airlines/Continental Express, 454 Mich. 373, 563 N.W.2d 23 (1997), the trial court determined that plaintiff's claim did not involve a report to a public body, as required by the WPA, concluding instead *578 that the DOE is not a "law enforcement agency," and therefore not a "public body" under the terms of the act:
This Court is not persuaded that the Department of Education and its Office of Inspector General is [a] "law enforcement agency." [Jacobson and Dolan] involve the Federal Bureau of Investigation and the Drug Enforcement Agency, respectively. These two federal agencies possess not only the authority to investigate claims, but also the authority to make arrests. Plaintiff does not provide, and this Court has found, no authority given to the Department of Education to arrest. While it may . . . have the authority to investigate criminal action, it does not possess the authority to effectuate enforcement of the laws and therefore it is not a "law enforcement agency." This conclusion is supported by the common meaning of the word "enforce": 1. to give force to; urge 2. to bring about or impose by force 3. to compel observance of.[1] [Emphasis in original.]
Accordingly, the trial court granted defendant's motion for summary disposition.[2] Plaintiff's motion for reconsideration was denied. Plaintiff now appeals.

II
This Court reviews de novo questions of law involving statutory interpretation and statutory construction. Michigan Muni. Liability & Property Pool v. Muskegon Co. Bd. of Co. Rd. Comm'rs, 235 Mich.App. 183, 189, 597 N.W.2d 187 (1999); Haworth, Inc. v. Wickes Mfg. Co., 210 Mich.App. 222, 227, 532 N.W.2d 903 (1995). This Court also reviews de novo the trial court's grant of summary disposition pursuant to MCR 2.116(C)(8) and (10). Dressel v. Ameribank, 468 Mich. 557, 561, 664 N.W.2d 151 (2003); Maiden v. Rozwood, 461 Mich. 109, 118 597 N.W.2d 817 (1999).
A motion under MCR 2.116(C)(8) tests the legal sufficiency of a complaint; a court considers only the pleadings when deciding a motion brought under this section. Maiden, supra at 119, 597 N.W.2d 817. For purposes of reviewing a motion for summary disposition under MCR 2.116(C)(8), all well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. Id. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are `so clearly unenforceable as a matter of law that no factual development could possible justify recovery.'" Id., quoting Wade v. Dep't of Corrections, 439 Mich. 158, 163, 483 N.W.2d 26 (1992).
When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. Corley v. Detroit Bd. of Ed., 470 Mich. 274, 278, 681 N.W.2d 342 (2004). Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. West v. Gen. Motors Corp., 469 Mich. 177, 183, 665 N.W.2d 468 (2003). A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue on which reasonable minds could differ. Id.

*579 III
Plaintiff argues that the trial court erred in finding that plaintiff was not engaged in an activity protected under the WPA because the DOE is not a "public body" pursuant to MCL 15.361(d)(v). We agree.

A
We first consider whether a federal agency, as opposed to a state or local agency, may be considered a public body under the WPA. Plaintiff's whistleblower claim is brought under MCL 15.362, which states:
An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [Emphasis added.]
Activity protected under the WPA consists of (1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation. Roulston v. Tendercare (Michigan), Inc., 239 Mich.App. 270, 279, 608 N.W.2d 525 (2000), citing MCL 15.362. To establish a prima facie case under the WPA, plaintiff must show that (1) she was engaged in a protected activity as set forth in the act, (2) defendant discharged her, and (3) a causal connection existed between the protected activity and the discharge. Roulston, supra at 279, 608 N.W.2d 525.
MCL 15.361(d) defines a "public body" under the WPA as follows:
"Public body" means all of the following:
(i) A state officer, employee, agency, department, division, bureau, board, commission, council, authority, or other body in the executive branch of state government.
(ii) An agency, board, commission, council, member, or employee of the legislative branch of state government.
(iii) A county, city, township, village, intercounty, intercity, or regional governing body, a council, school district, special district, or municipal corporation, or a board, department, commission, council, agency, or any member or employee thereof.
(iv) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body.
(v) A law enforcement agency or any member or employee of a law enforcement agency.
(vi) The judiciary and any member or employee of the judiciary. [Emphasis added.]
When construing the provisions of a statute, the primary task of this Court is to discern and give effect to the intent of the Legislature:
This task begins by examining the language of the statute itself. The words of a statute provide "the most reliable evidence of its intent. . . ." If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No *580 further judicial construction is required or permitted. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. [Sun Valley Foods Co. v. Ward, 460 Mich. 230, 236, 596 N.W.2d 119 (1999) (citations omitted).]
The WPA does not define "law enforcement agency." In reliance on the rule of noscitur a sociis, which stands for the principle that a word or phrase is given meaning by its context or setting, Herald Co. v. Bay City, 463 Mich. 111, 130 n. 10, 614 N.W.2d 873 (2000), defendant argues that the Legislature implicitly intended to exclude federal law enforcement agencies from the definition of "public body" because subsections d(i) through (iv) expressly limit the definition of "public body" to include only state and local governmental entities. We cannot agree. "Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, and a dictionary may be consulted for this purpose." Polkton Charter Twp. v. Pellegrom, 265 Mich.App. 88, 102, 693 N.W.2d 170 (2005). Black's Law Dictionary (8th ed.) defines "law enforcement" as "[t]he detection and punishment of violations of the law. This term is not limited to the enforcement of criminal laws." Clearly, the function of detecting and punishing violations of the law is not performed solely by state and local agencies, which is reflected in the express language of MCL 15.361(d)(v). Nothing in MCL 15.361(d)(v) demonstrates the Legislature's intent that the term "law enforcement agency" is limited to state or local enforcement agencies. "[A] court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.'" Hill v. Sacka, 256 Mich.App. 443, 447-448, 666 N.W.2d 282 (2003) (citation omitted).
Had the Legislature intended to limit the term "law enforcement agency" to mean only state and local law enforcement agencies, it could have expressly so stated, as it did in subsections d(i) through (iv), and as it has done in other statutes.[3] "The omission of a provision in one part of a statute that is included in another part of a statute should be construed as intentional, and provisions not included by the Legislature should not be included by the courts." Polkton, supra at 103, 693 N.W.2d 170 (citations omitted).
Our interpretation of MCL 15.361(d)(v) is further supported by the language of MCL 15.362, which unambiguously *581 provides for the reporting of violations of state and local laws as well as a "violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of . . . the United States. . . ." "Statutes in pari materia are statutes sharing a common purpose or relating to the same subject. They are construed together as one law, regardless of whether they contain any reference to one another." Omne Financial, Inc. v. Shacks, Inc., 460 Mich. 305, 312, 596 N.W.2d 591 (1999), citing State Treasurer v. Schuster, 456 Mich. 408, 417, 572 N.W.2d 628 (1998).
Because MCL 15.361(d)(v) and MCL 15.362 relate to the same subject, the WPA, and are thus read in pari materia, interpreting 15.361(d)(v) in the manner advanced by defendant would render the language pertaining to the reporting of violations of federal laws in MCL 15.362 nugatory.[4]Bageris v. Brandon Twp., 264 Mich.App. 156, 162, 691 N.W.2d 459 (2004) (stating that constructions of statutes that would render any part of a statute surplusage or nugatory are to be avoided).
Moreover, because MCL 15.361(d)(v) is unambiguous, we reject as unpersuasive defendant's argument that the legislative history and House Legislative Analysis, HB 5088 and 5089, February 5, 1981, reflect a legislative intent to limit the definition of "public body" to state and local agencies. It is well settled in Michigan that legislative analysis is a "generally unpersuasive tool of statutory construction," Frank W. Lynch & Co. v. Flex Technologies, Inc., 463 Mich. 578, 587, 624 N.W.2d 180 (2001), particularly given that the analyses themselves carry a warning "`that they do not constitute an official statement of legislative intent,'" Morales v. Parole Bd., 260 Mich.App. 29, 43, 676 N.W.2d 221 (2003), quoting Lynch, supra at 588 n. 7, 624 N.W.2d 180. In conclusion we hold that under the plain language of MCL 15.361(d), a federal agency may qualify as a law enforcement agency and, thus, as a public body under the WPA.

B
We next address whether the DOE, as a federal agency, qualifies as a law enforcement agency under the WPA. We initially note that the trial court erred by determining whether an agency is a law enforcement agency exclusively on the basis of whether the agency has arrest powers to enforce the law. An "arrest" is "[a] seizure or forcible restraint" or "[t]he taking or keeping of a person in custody by legal authority. . . ." Black's Law Dictionary (8th ed). In focusing exclusively on arrest powers, the trial court overlooked the settled principle that the Legislature designed the WPA to protect the public from unlawful conduct by corporations and governmental bodies. Anzaldua v. Band, 457 Mich. 530, 533, 578 N.W.2d 306 (1998), citing Dolan, supra at 378 n. 9, 563 N.W.2d 23. It is axiomatic that a corporation or governmental body is not subject to the threat of arrest, and, as such, the power to arrest cannot be the sole factor in determining whether an agency is a law enforcement agency. Instead, we consider, as discussed earlier, the specific powers granted to the DOE to detect and punish violations of the law.
The Department of Education is a department within the executive branch, 5 *582 USC 101; 20 USC 3411, ensuring, among other things, that education issues receive proper treatment at the federal level, 20 USC 3402. Congress enacted the Inspector General Act of 1978, 5 USC, Appendix 3, § 1 et seq., in order "`to more effectively combat fraud, abuse, waste and mismanagement in the programs and operations of . . . departments and agencies.'" United States Nuclear Regulatory Comm. v. Fed. Labor Relations Auth., 25 F.3d 229, 233 (C.A.4, 1994) (citation omitted). "To that end, Congress established in each specified governmental agency [including the Department of Education] an Office of Inspector General, as an `independent and objective unit,' charging each unit with the responsibility of conducting and supervising audits and civil and criminal investigations relating to that agency's operations." Id., citing 5 USC Appendix 3, § 4(a)(1).
With regard to investigative powers, the DOE Inspector General is authorized to have access to all pertinent documents and persons, and is given broad subpoena powers pursuant to 5 USC Appendix 3, § 6. In addition, under 31 USC 3803, the DOE Inspector General is also authorized to investigate allegations that an entity filed a false, fictitious, or fraudulent claim with the DOE. "[A]fter reasonable notice and opportunity for a hearing" the DOE is authorized to "suspend or terminate the eligibility status for any or all programs under this subchapter . . . of any otherwise eligible institution" or "impose a civil penalty upon such institution of not to exceed $25,000 for each violation or misrepresentation." 20 USC 1094(c)(3). Moreover, effective December 8, 2003, § 6(e) was added to the Inspector General Act of 1978 by § 812(a) of the Homeland Security Act, P.L. 107-296, which authorized the DOE Inspector General and assistants to carry firearms, make arrests without warrants (on the reasonable belief that a felony has been committed), seek and execute warrants, search premises on probable cause, and seize evidence, with authorization from the United States Attorney General.[5] 5 USC Appendix 3, § 6(e).
Given these statutory powers, we conclude that the DOE, as a federal institution, falls within the definition of "law enforcement agency" in the WPA.
We respectfully disagree with the dissent's view that the term "law enforcement agency" as more narrowly construed by this Court in In re Faketty, 121 Mich.App. 266, 271, 328 N.W.2d 551 (1982), is applicable here. In Faketty, this Court interpreted the meaning of the term "law enforcement agency" as it was used in the juvenile court rule that permitted the juvenile court to order the expunction of delinquency and neglect records of juveniles. JCR 1969, 13. This Court held that the term "law enforcement agency" as used within that rule referred to agencies charged with the prevention and detection of crime and the enforcement of the general criminal laws of the state, and concluded that because the Department of Corrections had *583 authority relating "solely to the administration of penal institutions, probation, pardons, paroles and commutations and other aspects of the department's corrections functions," it did not have the responsibility to enforce the general criminal laws of the state. Faketty, supra at 271, 328 N.W.2d 551.
We first note that Faketty is not binding on this Court. MCR 7.215(J)(1). Moreover, Faketty is readily distinguished. For example, the WPA, by its plain language, is intended to protect an employee who "reports or is about to report . . . a violation or a suspected violation of a law or regulation or rule. . . ." MCL 15.362 (emphasis added). As noted in Clonlara, Inc. v. State Bd. of Ed., 442 Mich. 230, 239, 501 N.W.2d 88 (1993), the version of MCL 24.207 of the Administrative Procedures Act at issue in that case provided: "`Rule' means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission thereof. . . ." (Emphasis added). Moreover, administrative "[a]gencies have the authority to interpret the statutes they are bound to administer and enforce." Clonlara, Inc., supra at 240, 501 N.W.2d 88. Whereas there was a narrow context in which this Court in Faketty considered whether the Department of Corrections was a law enforcement agency under JCR 1969, 13, here, because remedial statutes like the WPA are liberally construed in favor of the persons intended to be benefited, Brown v. Mayor of Detroit, 271 Mich.App. 692, 706, 723 N.W.2d 464 (2006), we conclude that the DOE, with its power to conduct civil and criminal investigations in order to enforce the laws under its purview, constitutes a law enforcement agency within the meaning of the WPA.
We find Lewandowski v. Nuclear Mgt. Co., LLC, 272 Mich.App. 120, 126, 724 N.W.2d 718 (2006), to be distinguishable. Lewandowski held that the federal Nuclear Regulatory Commission (NRC) was not a "law enforcement agency," and therefore not a "public body" under the WPA. Lewandowski relied on the fact that federal law "specifically designates the NRC as an independent regulatory agency[.]" Id. (emphasis added). The DOE by contrast, is not an independent regulatory agency, but an executive department. 5 USC 101. The head of the department (the Secretary of Education), as "the principal Officer"[6] of the department, is appointed by the President of the United States, the head of the executive branch, which is charged with law enforcement. U.S. Const., art. II, § 3 (The President "shall take Care that the Laws be faithfully executed. . . . "). As such, given the statutory authority the DOE has to conduct civil and criminal investigations in order to enforce the laws under its purview, the DOE is a law enforcement agency under the WPA.

IV
Because the plain language of MCL 15.361(d) contemplates that a federal agency may qualify as a law enforcement agency under the WPA, and given the broad grant of statutory authority to detect and punish violations of laws relating to the DOE's operations, we conclude that the DOE is a law enforcement agency under MCL 15.361(d)(v). Having reported wrongdoing to a "public body" as defined in MCL 15.361(d), plaintiff demonstrated that she was engaged in an activity protected under the WPA. The trial court *584 erred in granting defendant's motion for summary disposition.
Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.
DAVIS, J., concurred.
ZAHRA, J. (dissenting).
I respectfully dissent. While I agree with the majority's conclusion that a federal law enforcement agency may be considered a public body under the Michigan Whistleblowers' Protection Act (WPA), MCL 15.361 et seq., I disagree with the majority's conclusion that the Department of Education (DOE), with its Office of Inspector General (OIG), is a law enforcement agency under the WPA. I would affirm the judgment of the trial court.
The dispositive issue in this case turns on the meaning of the term "law enforcement agency" as it is used in the WPA. As observed by the majority, this term is not defined in the WPA. Every word or phrase undefined by statute should be accorded its plain and ordinary meaning, considering the context in which each word or phrase is used. MCL 8.3a; Cain v. Waste Mgt., Inc. (After Remand), 472 Mich. 236, 245, 697 N.W.2d 130 (2005).
The majority has concluded that the DOE is a law enforcement agency merely because it is an agency that has been granted some limited law enforcement powers through the OIG. This conclusion is erroneous. Significantly, the WPA makes reference to a "law enforcement agency," not an agency with law enforcement power. I conclude that the phrase "law enforcement agency" refers to an agency that has as its primary purpose the enforcement of the general criminal laws of the jurisdiction. The DOE is not such an agency.[1] The primary purpose of the DOE is not the enforcement of criminal laws. Rather, the DOE is an agency created to implement the education policies of the United States government.
This Court has previously considered the meaning of the term "law enforcement agency." In re Faketty, 121 Mich.App. *585 266, 271, 328 N.W.2d 551 (1982). Consistently with the position I advocate here, this Court concluded in Faketty that the phrase "law enforcement agency" refers to "those agencies charged with the prevention and detection of crime and enforcement of the general criminal laws of this state." Id.[2]
In defining the meaning of "law enforcement agency," this Court in Faketty considered the Michigan Law Enforcement Officers Training Council Act of 1965 (currently titled the Commission on Law Enforcement Standards Act [COLES]), MCL 28.601 et seq., which describes and defines the duties of a law enforcement officer.[3] This Court concluded that "the term `law enforcement agency' refers to those agencies charged with the prevention and detection of crime and enforcement of the general criminal laws of this state." 121 Mich.App. at 271, 328 N.W.2d 551. This Court then reviewed the jurisdiction of the Department of Corrections and concluded:
The powers which the Legislature has extended to the department are related solely to the administration of penal institutions, probation, pardons, paroles and commutation and other aspects of the department's corrections functions. It is clear that the department is not charged with the enforcement of the general criminal laws of this state. The probate court . . . correctly ruled that the department is not a "law enforcement agency" within JCR 1969, 13. [Id.]
Consistently with Faketty, I would not confer "law enforcement agency" status to those governmental agencies or their employees that are not charged with enforcing the general criminal laws of their *586 jurisdiction or otherwise specifically enumerated as such by statute.
My conclusion that the DOE is not a law enforcement agency is not changed merely because the DOE utilized its OIG to investigate limited matters. Inspectors general were created by the Inspector General Act of 1978 (the Act), 5 USC Appendix 3, § 1 et seq. The Act did not empower inspectors to enforce the general criminal laws of the country. See 5 USC Appendix 3, § 2.[4] The code sections pertaining to the DOE also do not confer such authority.[5] Congress would not create a law enforcement agency and then hamstring it to the extent it has by limiting the OIG's use of such capabilities.
In sum, the Michigan Legislature limited disclosures protected under the WPA to those made to entities that fit into one of the enumerated categories of the WPA. Plaintiff cannot fit the DOE or its OIG into any one of the categories. Therefore, I would affirm the judgment of the trial court.
NOTES
[1] The trial court cited, and apparently quoted, Webster's New World Dictionary, Second College Edition (1984).
[2] Not relevant to this appeal is the trial court's denial of plaintiff's motion to amend her complaint.
[3] See MCL 3.731(b) ("`Law enforcement agency' means a police or sheriff's department that has the authority to enforce the general criminal laws of this state or a similar governmental organization of a physically adjacent state."); MCL 28.241a(i) (defining "law enforcement agency" as "the police department of a city, township, or village, the sheriff's department of a county, the department [of state police], or any other governmental law enforcement agency of this state"); MCL 28.258(1)(d) ("`Law enforcement agency' means the department; [of state police]; a police agency of a city, village, or township; a sheriff's department; or any other governmental law enforcement agency in this state."); MCL 257.675d(2)(a) ("`Law enforcement agency' means a police agency of a city, village, or township; a sheriff's department; the department of state police; or any other governmental law enforcement agency in this state."); MCL 287.705(1) ("`Law enforcement agency' means the department of state police, the department of natural resources, or a law enforcement agency of a county, township, city, or village that is responsible for the prevention and detection of crime and enforcement of the criminal laws of this state."); and MCL 722.822(d) ("`Law enforcement agency' means a police department of a city, village, or township, a sheriff's department, the department of state police, or any other governmental law enforcement agency in this state.").
[4] For this same reason, we reject defendant's reliance on Ciccarelli v. Plastic Surgery Affiliates, PC, unpublished opinion per curiam of the Court of Appeals, issued March 27, 2001 (Docket No. 219780), 2001 WL 699094, which applied the rule of noscitur a sociis to interpret MCL 15.361(d) to expressly limit the definition "public body" to bodies of state government or its political subdivisions. Moreover, Ciccarelli is an unpublished opinion and, therefore, not binding on this Court. MCR 7.215(C)(1).
[5] The DOE Inspector General has concurrent responsibility with the Department of Justice (DOJ) and the Federal Bureau of Investigation for the prevention and detection of waste and abuse within the DOE. However, before the enactment of § 812 of the Homeland Security Act, the DOE Inspector General relied on memoranda of understanding with the DOJ that provided temporary grants of law enforcement powers through deputations. As the volume of investigations increased, deputations were authorized on an office-wide basis. The memoranda of understanding were replaced, pursuant to § 6(e)(4) of the Inspector General Act, with United States Attorney General Guidelines. 5 USC Appendix 3, § 6(e)(4). See Attorney General's Guidelines for Offices of Inspector General with Statutory Law Enforcement Authority (December 8, 2003); see P.L. 107-296, 116 Stat 2135 (codified as amended in scattered sections of the USC).
[6] See U.S. Const., art. II, § 2, cl. 1.
[1] Congress expressed the purpose of the DOE in the Department of Education Organization Act, 20 USC 3402:

The Congress declares that the establishment of a Department of Education is in the public interest, will promote the general welfare of the United States, will help ensure that education issues receive proper treatment at the Federal level, and will enable the Federal Government to coordinate its education activities more effectively. Therefore, the purposes of this Act are
(1) to strengthen the Federal commitment to ensuring access to equal educational opportunity for every individual;
(2) to supplement and complement the efforts of States, the local school systems and other instrumentalities of the States, the private sector, public and private educational institutions, public and private nonprofit educational research institutions, community-based organizations, parents, and students to improve the quality of education;
(3) to encourage the increased involvement of the public, parents, and students in Federal education programs;
(4) to promote improvements in the quality and usefulness of education through federally supported research, evaluation, and sharing of information;
(5) to improve the coordination of Federal education programs;
(6) to improve the management and efficiency of Federal education activities, especially with respect to the process, procedures, and administrative structures for the dispersal of Federal funds, as well as the reduction of unnecessary and duplicative burdens and constraints, including unnecessary paperwork, on the recipients of Federal funds; and
(7) to increase the accountability of Federal education programs to the President, the Congress, and the public.
[2] In In re Faketty, petitioner Faketty asked the probate court to expunge his juvenile record as provided under the Juvenile Court Rules, specifically JCR 1969, 13, which provided in pertinent part: "The court may at any time order the expunction of its own files and records and any law enforcement agency files and records pertaining to a juvenile, including fingerprints and photographs, on a showing of good cause." The probate court expunged the court's records, but declined to order expunction of the Michigan Department of Corrections records. While the panel in Faketty was called upon to interpret a court rule, and in the present case we are called upon to interpret a statute, the rules of interpretation for statutes and court rules are identical. In re KH, 469 Mich. 621, 628, 677 N.W.2d 800 (2004).
[3] MCL 28.602(l) of COLES provides:

"Police officer" or "law enforcement officer" means, unless the context requires otherwise, any of the following:
(i) A regularly employed member of a law enforcement agency authorized and established pursuant to law, including common law, who is responsible for the prevention and detection of crime and the enforcement of the general criminal laws of this state. Police officer or law enforcement officer does not include a person serving solely because he or she occupies any other office or position.
(ii) A law enforcement officer of a Michigan Indian tribal police force, subject to the limitations set forth in section 9(3).
(iii) The sergeant at arms or any assistant sergeant at arms of either house of the legislature who is commissioned as a police officer by that respective house of the legislature as provided by the legislative sergeant at arms police powers act, 2001 P.A. 185, MCL 4.381 to 4.382.
(iv) A law enforcement officer of a multicounty metropolitan district, subject to the limitations of section 9(7).
(v) A county prosecuting attorney's investigator sworn and fully empowered by the sheriff of that county.
(vi) Until December 31, 2007, a law enforcement officer of a school district in this state that has a membership of at least 20,000 pupils and that includes in its territory a city with a population of at least 180,000 as of the most recent federal decennial census.
(vii) A fire arson investigator from a fire department within a city with a population of not less than 750,000 who is sworn and fully empowered by the city chief of police.
[4] The statute reads:

In order to create independent and objective units
(1) to conduct and supervise audits and investigations relating to the programs and operations of the establishments . . . ;
(2) to provide leadership and coordination and recommend policies for activities designed (A) to promote economy, efficiency, and effectiveness in the administration of, and (B) to prevent and detect fraud and abuse in, such programs and operations; and
(3) to provide a means for keeping the head of the establishment and the Congress fully and currently informed about problems and deficiencies relating to the administration of such programs and operations and the necessity for and progress of corrective action;
there is established
(A) in each of such establishments an office of Inspector General. . . . [5 USC App. 3, § 2.]
[5] 20 USC 3422 reads: "There shall be in the [DOE] an Office of Inspector General, established in accordance with the Inspector General Act of 1978."