# STATE OF MICHIGAN

# COURT OF APPEALS

JUDITH SARKOZY, doing business as
SARKOZY BAKERY,

Plaintiff-Appellant,

v

HANOVER INSURANCE COMPANY,
CITIZENS INSURANCE COMPANY OF
AMERICA, and HUB INTERNATIONAL
MIDWEST LIMITED,

Defendants-Appellees.

UNPUBLISHED
August 30, 2016

No. 326454
Kalamazoo Circuit Court
LC No. 2013-000156-NZ

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in favor of defendants Hanover Insurance Company ("Hanover"), Citizens Insurance Company of America ("Citizens"), and HUB International Midwest Limited ("HUB"), on her claims arising out of a fire that consumed Sarkozy Bakery ("the bakery"). We affirm.

The bakery and its contents were destroyed by fire in 2012. Plaintiff received insurance proceeds from Hanover for the full policy limits on the building and its contents. Those proceeds were insufficient to fully replace the building and its contents. In this lawsuit, plaintiff argues that the bakery and its contents were underinsured due to the tortious acts of her independent insurance agent (HUB and its predecessors) and her insurers (Hanover/Citizens). Plaintiff seeks relief under several theories: (1) negligence; (2) silent fraud; (3) breach of fiduciary duty; (4) tortious interference with business relationship or expectancy; and (5) breach of duty to defend or indemnify.

This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). "When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id*. at 509-510. "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 509. "A genuine issue of material fact exists when the record, giving the

-1-

benefit of any reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *Id*. at 510. "Questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

To prevail in a negligence action, "a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). "If a trial court determines that, as a matter of law, the defendant owed no duty to the plaintiff, summary disposition is properly granted in the defendant's favor . . . ." *Dykema v Gus Macker Enterprises, Inc*, 196 Mich App 6, 9; 492 NW2d 472 (1992). "Whether a duty exists is a question of law that is solely for the court to decide." *Harts v Farmers Ins Exch*, 461 Mich 1, 5; 597 NW2d 47 (1999). Questions of law are reviewed de novo. *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004).

Plaintiff argues that defendants expressly agreed to assume the duty of advising plaintiff of the adequacy of her policy limits and, therefore, defendants owed her a duty under the special relationship test in *Harts*, 461 Mich at 5. Plaintiff misreads the law. *Harts* applies to exclusive insurance agents, not independent agents (such as HUB) or insurers (such as Hanover/Citizens). *Id*. at 7-10.

"[T]he relationship between the insurer and the insured is a contractual one." *Id*. at 7. Plaintiff has failed to identify any language in her insurance policy to suggest that Hanover/Citizens had a duty to advise her of the adequacy of her policy limits. Indeed, the policy actually disclaims such a duty, providing that "[w]e [the insurer] are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged." Plaintiff's insurance policy clearly stated the policy limits for each type of coverage she purchased, and provided that "[t]he most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown[.]" Plaintiff was obligated to read the policy and raise any questions she had about the adequacy of her policy limits within a reasonable time. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 29; 761 NW2d 151 (2008). Plaintiff testified that she always read her insurance policies, but there is no evidence that she ever contacted Hanover/Citizens with questions regarding the adequacy of the policy limits contained therein. Because an insurer's duties to an insured arise from the policy, plaintiff cannot establish that Hanover/Citizens owed her a duty in negligence with respect to this claim and, accordingly, the trial court properly granted summary disposition in their favor. *Dykema*, 196 Mich App at 9.

Turning to plaintiff's claim against HUB, it is undisputed that Terry Stewart (plaintiff's original insurance agent), and his successors, i.e., HUB, were and are independent insurance agents. An "independent insurance agent or broker is considered an agent of the insured rather than an agent of the insurer." *Genesee Foods Servs, Inc v Meadowbrook, Inc*, 279 Mich App 649, 654; 760 NW2d 259 (2008) (quotation marks and citation omitted). An independent insurance agent owes a duty of loyalty and good faith. See *Burton v Burton*, 332 Mich 326, 337; 51 NW2d 297 (1952).

[B]ecause defendants were independent insurance agents when they assisted plaintiffs, their primary fiduciary duty of loyalty rested with plaintiffs, who could depend on this duty of loyalty to *ensure that defendants were acting in their best interests, both in terms of finding an insurer that could provide them with the most comprehensive coverage and in ensuring that the insurance contract properly addressed their needs.* [*Genesee Foods Servs, Inc*, 279 Mich App at 656 (emphasis added).]

Thus, contrary to the trial court's ruling, HUB, as plaintiff's independent insurance agent, owed her a duty in negligence—that of loyalty and good faith. However, this error does not require reversal because plaintiff has presented no evidence that HUB breached its duty with regard to advising her of the adequacy of her policy limits. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000) ("[W]e will not reverse the trial court's order when the right result was reached for the wrong reason.").

This Court has held that "[g]enerally, an insurance agent does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage. Instead, the insured is obligated to read the policy and raise questions concerning coverage within a reasonable time after issuance." *Mate v Wolverine Ins Co*, 233 Mich App 14, 22-23; 592 NW2d 379 (1998) (citation and internal quotation marks omitted). Plaintiff testified that she read her policy every year, but there is no evidence that she ever raised concerns about the adequacy of her policy limits. There is no testimony that plaintiff ever requested that Stewart or HUB obtain RCV coverage or ensure that the limits of her policy were sufficient to replace the bakery and its contents.[1] Plaintiff repeatedly assented to the renewal of the policy with limits based on an ACV calculation. Accordingly, although HUB owed plaintiff a duty of loyalty and good faith, plaintiff has presented no evidence that would allow reasonable minds to differ as to whether HUB (or its predecessors) breached that duty. *Ernsting*, 274 Mich App at 510. Accordingly, the trial court properly granted summary disposition in favor of HUB on plaintiff's negligence claim related to the adequacy of her policy limits. *Taylor*, 241 Mich App at 458.

Plaintiff also argues that Hanover/Citizens breached the standard duty of care in ordinary negligence by mislabeling plaintiff's policy on the declarations page as "replacement cost." Even if this act breached a duty owed, plaintiff's claim fails because there is no evidence that it caused her claimed damages. *Case*, 463 Mich at 6. Plaintiff's insurance policy plainly provided that any loss would be paid consistent with the policy limits, not any classification listed on the

---

[1] The trial court properly refused to consider plaintiff's late-filed affidavits. At her deposition, plaintiff testified unequivocally and repeatedly that she could not recall any conversation with Stewart, or any employee of HUB or Hanover/Citizens, concerning the adequacy of her policy limits or whether those policy limits were sufficient to fully replace the bakery and its contents. Plaintiff later filed affidavits wherein she averred that she remembered that Stewart made various specific representations to her and that she specifically requested RCV coverage. However, "a witness is bound by his or her deposition testimony, and that testimony cannot be contradicted by affidavit in an attempt to defeat a motion for summary disposition." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006).

declarations page. Moreover, it is undisputed that plaintiff paid premiums based on those policy limits. "[P]erhaps the most fundamental rule of Michigan insurance jurisprudence is that an insurer can never be held liable for a risk . . . for which it did not charge or receive any premium." *Dunn v Detroit Auto Inter-Ins Exch*, 254 Mich App 256, 270; 657 NW2d 153 (2002) (quotation marks and citation omitted). Thus, the trial court did not err in granting summary disposition in favor of Hanover/Citizens on plaintiff's claim of ordinary negligence.

Plaintiff next argues that the trial court erred in granting summary disposition in favor of Hanover/Citizens on her claim of silent fraud. In 1997, a Hanover/Citizens employee performed an internal "Marshall Swift" valuation of the bakery building. The calculated "actual cash value" ("ACV") calculated was significantly higher than the policy limit on the building in effect at the time. Plaintiff argues that Hanover/Citizens committed silent fraud by failing to disclose to her this valuation.

"[I]n order to prove a claim of silent fraud, a plaintiff must show that some type of representation that was false or misleading was made and that there was a legal or equitable duty of disclosure." *M&D, Inc v WB McConkey*, 231 Mich App 22, 32; 585 NW2d 33 (1998). "We emphasize that there must be some type of misrepresentation, whether by words or action, in order to establish a claim of silent fraud." *Id*. at 36. That is, "mere nondisclosure is insufficient. There must be circumstances that establish a legal duty to make a disclosure." *Hord v Environmental Research Institute of Mich*, 463 Mich 399, 412; 617 NW2d 543 (2000).

Hanover/Citizens was under no duty to advise plaintiff regarding the adequacy of her coverage or policy limits. An insurer's duty to an insured is governed by the insurance policy. *Harts*, 461 Mich at 7. Plaintiff has pointed to no provision in her insurance policy to suggest that Hanover/Citizens had a duty to disclose its internal valuations of her property. Moreover, as the Supreme Court stated, "a legal duty will arise most commonly in a [silent fraud] situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *Hord*, 463 Mich at 412. There is no evidence that plaintiff ever contacted Hanover/Citizens regarding the adequacy of her coverage or whether her policy limits were sufficient to replace the bakery and its contents. There being no inquiry, Hanover/Citizens cannot be charged with omitting material information in a reply. See *Burger v Allstate Ins Co*, 667 F Supp 2d 738, 743 (ED Mich, 2009) (insurer has no duty to disclose where the insured does not question the benefits being offered).[2] Moreover, plaintiff has failed to establish that Hanover/Citizens made a misrepresentation. There is no language in the insurance policy suggesting that plaintiff's policy limit was consistent with a Marshall Swift ACV or RCV valuation. Thus, Hanover/Citizens was not required to "correct" the alleged misrepresentation made by the policy limit.

Plaintiff argues that the trial court erred in granting summary disposition in favor of HUB on the claim for breach of fiduciary duty. According to plaintiff, HUB breached its fiduciary duty when, in 2007, it and Hanover/Citizens executed the "Service Center Contract," which

---

[2] Lower federal court decisions are not binding on this Court, but may be persuasive. *Donkers v Kovach*, 277 Mich App 366, 372 n 3; 745 NW2d 154 (2007).

allowed HUB clients who were insured by Hanover/Citizens to directly contact a customer service center maintained by Hanover/Citizens with policy questions and changes. "Whether to recognize a cause of action for breach of fiduciary duty is a question of law reviewed de novo, because the existence of a duty is generally a question of law." *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 20; 824 NW2d 202 (2012) (citation omitted).

HUB owed plaintiff a fiduciary duty of loyalty and good faith. *Burton*, 332 Mich at 337; *Genesee Foods Servs, Inc*, 279 Mich App at 656. Plaintiff argues that HUB breached the following fiduciary duties by entering into the Service Center Contract: (1) duty to disclose all material facts; (2) duty of fidelity and loyalty; and (3) duty of good faith and fair dealing. See *Stephenson v Golden*, 279 Mich 710, 735-738; 276 NW 849 (1937). Plaintiff presented no evidence to suggest that breaches of any of these duties occurred. As to the first, there was evidence that HUB informed plaintiff of the availability of the Center and its function; plaintiff does not dispute this evidence. As to the second, plaintiff repeatedly asserts that, by entering into the Service Center Contract, HUB somehow abdicated its function as an independent insurance agent and made plaintiff a permanent customer of Hanover/Citizens. There is simply no evidence to that effect. HUB remained at all times plaintiff's independent insurance agent. Plaintiff was free to contact HUB at any time and, indeed, did so following the execution of the Service Center Contract. Plaintiff's HUB agent testified that, if plaintiff wished for HUB to shop her insurance to carriers other than Hanover/Citizens, it would have done so. There is also no evidence to support plaintiff's claimed violation of the duty of good faith and fair dealing. The record indicates that plaintiff was apprised of everything related to the Service Center Contract and that HUB was also available to answer any questions, which it did indeed do when plaintiff called. In one instance, plaintiff's HUB agent contacted the Center on plaintiff's behalf and obtained a premium reduction. Accordingly, the trial court did not err in granting HUB's motion for summary disposition on plaintiff's claim of breach of fiduciary duty. *Calhoun Co*, 291 Mich App at 20.

Plaintiff also claims that the trial court erred in granting summary disposition in favor of Hanover/Citizens on her claim for tortious interference with a business relationship. According to plaintiff, Hanover/Citizens interfered with her relationship with HUB when it executed the Service Center Contract.

> The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damages to the plaintiff. To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference. [*Badiee v Brighton Area Sch*, 265 Mich App 343, 365-366; 695 NW2d 521 (2005) (citations and emphasis omitted).]

There is no evidence that the Service Center Contract breached or terminated plaintiff's business relationship with HUB. Plaintiff was free to contact HUB at any time after the

execution of the Service Center Contract to inquire about the adequacy of her coverage, her policy limits, or any other matter regarding her policy. Indeed, it is undisputed that plaintiff *did* contact HUB regarding her policy. The evidence indicates that plaintiff was told that she could contact HUB or the Center, and there is no indication that plaintiff was prevented from contacting HUB and seeking assistance. There was testimony that, had plaintiff requested, HUB would have shopped her policy to other insurance carriers. Plaintiff has presented no authority to suggest that an independent agent is required to unilaterally shop an insured's policy when the insured expresses satisfaction at renewing the policy. There is no language in the Service Center Contract requiring HUB to keep plaintiff's policy with Hanover/Citizens or otherwise favor Hanover/Citizens over other insurance companies. In sum, it does not appear that Hanover/Citizens' allegedly wrongful actions significantly affected plaintiff's relationship with HUB, much less breached or terminated it. Essentially, the Center simply provided plaintiff with another customer service outlet. Accordingly, because plaintiff presented no evidence that the Service Center Contract breached or terminated her business relationship with HUB, the trial court did not err in granting summary disposition in favor of Hanover/Citizens on plaintiff's claim for tortious interference with business relationship. *Badiee*, 265 Mich App at 365-366.

Lastly, plaintiff argues that Hanover breached its duties to defend and indemnify her. Following the fire, plaintiff retained an attorney after she received letters from bakery neighbors reserving the right to pursue litigation if the demolition of the bakery was not properly handled. Plaintiff now seeks reimbursement of the money spent on the demolition and the attorney.

To prevail on an action for breach of contract, plaintiff must show "that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "An insurance policy is much the same as any other contract. The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate. . . . [I]if the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning . . . ." *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 197-198; 702 NW2d 106 (2005).

The policy language at issue provides:

> a. *We will pay those sums that the insured becomes legally obligated to pay* as damages because of "bodily injury" or "property damage" to which this insurance applies. *We will have the right and duty to defend the insured against any "suit" seeking those damages*. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. *We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.* [Emphasis added.]

The policy provides that the words in quotation marks have a "special meaning" defined in the policy. Of relevance here is the definition of "suit":

> 18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Under none of the policy definitions was a "suit" brought against plaintiff. There is no proof, or even allegation, that a civil lawsuit was filed or that arbitration or other alternative dispute resolution proceeding was commenced. Plaintiff merely received letters that, at best, threatened possible future litigation. Under the plain and unambiguous language of the policy, those letters were insufficient to trigger Hanover's duty to defend plaintiff. To the extent plaintiff argues that Hanover failed to properly respond to her attorney's inquiry or investigate the matter, the policy unambiguously provides that Hanover may investigate at its discretion. There is no language qualifying this discretion. Simply put, under the policy language, plaintiff was required to wait for the filing of a "suit" before being entitled to defense from Hanover. Thus, the trial court did not err in granting summary disposition in favor of Hanover on plaintiff's claim that it breached its duty to defend.

As to plaintiff's claim for indemnification, the policy plainly provides that Hanover will pay "those sums that the insured becomes *legally obligated to pay as damages . . . .*" (Emphasis added.) There is no allegation or indication that plaintiff became "legally obligated" to pay any of the "damages" for which she now seeks indemnification. Had the bakery's neighbors or another party filed a lawsuit or pursued other legal remedies, plaintiff might have become legally obligated to pay damages. However, there is no evidence that plaintiff incurred any such legal obligation. Moreover, it is undisputed that plaintiff made the payments for which she now seeks indemnification at her own volition. The policy unambiguously provides that plaintiff shall make no such payments without Hanover's consent, except at her own cost. Accordingly, the trial court did not err in granting summary disposition in favor of Hanover on plaintiff's breach of contract claim related to indemnification.[3]

Affirmed.


/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[3] We reject plaintiff's argument that the trial court violated her constitutional right to a jury trial by granting summary disposition in favor of defendants. It is well-established that the court rules for granting summary disposition do not violate the constitutional right to a jury trial. See, e.g., *People's Wayne Co Bank v Wolverine Box Co*, 250 Mich 273, 284-285; 230 NW 170 (1930); *Moll v Abbott Laboratories*, 444 Mich 1, 26-27; 506 NW2d 816 (1993).