# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

UNPUBLISHED
September 13, 2016

Plaintiff-Appellee/Cross-Appellant,

v

No. 327787
Kent Circuit Court
LC No. 13-003873-NZ

CITY OF GRAND RAPIDS,

Defendant-Appellant/Cross-
Appellee.

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Defendant, the City of Grand Rapids (the City), appeals as of right the opinion and order of the trial court that denied its motion for summary disposition on the ground of governmental immunity under MCR 2.116(C)(7). Plaintiff, Travelers Property Casualty Company of America, as subrogee of Calvin College, cross-appeals from the same order that also denied its competing motion for summary disposition pursuant to MCR 2.116(C)(10). Because material questions of fact remain regarding (1) whether the City knew, or with reasonable diligence should have known, about the defect in the sewer line and (2) whether the defect was a substantial proximate cause of the sewer event and resulting property damage, we affirm the trial court's denial of both motions for summary disposition and remand for further proceedings.

On May 11, 2011, sewage and/or water flooded the first floors of two Calvin College apartment buildings located on Burton Street SE in Grand Rapids. Near the two apartment buildings in question sits "manhole 15109," a "drop manhole" fed by two sewer pipes: a 12-inch pipe coming from the west and an 8-inch pipe coming from the east. On the day the apartment buildings flooded, the 8-inch pipe failed near manhole 15109, causing Burton Street to collapse. As a result of the flooding in the apartment buildings, plaintiff, Calvin College's insurer, paid over $400,000 in remediation expenses.

Plaintiff then filed suit against the City under the "sewage disposal system event" exception to governmental immunity, seeking to recover damages in excess of $400,000. See MCL 691.1416-MCL 691.1419. The parties filed cross-motions for summary disposition, focusing their arguments on (1) whether the City knew, or in the exercise of reasonable diligence should have known, about the defect in the 8-inch pipe and (2) whether the defect in that pipe

-1-

was a substantial proximate cause of the flooding. Important to these issues, the City had video footage from September 2010 of manhole 15109 as well as the nearby 8- and 12-inch pipes. Plaintiff retained an expert in sewer pipe analysis, Stephan Bichler, who opined based on his viewing of the sewer video that there were defects in the 8-inch pipe which caused the sewer failure and resulting property damage. In contrast, the City offered testimony from various employees to support its assertions that it did not know, and could not have known, of any defect because the video footage showed no defects and, in fact, *the* defect which specifically caused the failure in the pipe could not have been visible because it was on the bottom of the pipe, under sewage flowing in the pipe. The City also maintained that severe rainfall contributed to the sewer backup and that, because it was a defect in the bottom of the pipe which caused the backup, Bichler's causation testimony amounted to mere speculation.

Considering the conflicting evidence presented, the trial court determined that fact questions remained in regard to the City's knowledge of the defect and the issue of proximate causation. For this reason, the trial court denied the City's motion for summary disposition under MCR 2.116(C)(7) as well as plaintiff's motion for summary disposition under MCR 2.116(C)(10). The City now appeals as of right and plaintiff has filed a cross-appeal.

On appeal, the City again argues that it is entitled to summary disposition under MCR 2.116(C)(7) because it is a governmental agency and plaintiff has failed to show the applicability of the sewage system disposal event exception to governmental immunity. In particular, consistent with its arguments in the trial court, the City argues that plaintiff cannot show that the City knew, or should have known, of a defect in the 8-inch pipe because the video does not depict any defect in the 8-inch pipe and the defect in question would not have been visible because it was underneath sewage on the bottom of the pipe. The City also argues that severe rain played a significant role in the flooding of the apartment buildings and that, because a defect in the bottom of the pipe caused the backup, Bichler's causation testimony is mere speculation. Like the trial court, we conclude that material questions of fact remain with respect to these issues, such that the City is not entitled to summary disposition.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). "Further, the determination regarding the applicability of governmental immunity and a statutory exception to governmental immunity is a question of law that is also subject to review de novo." *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). When a claim is barred by governmental immunity, the moving party is entitled to summary disposition under MCR 2.116(C)(7). *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). "Under MCR 2.116(C)(7), all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Willet v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006) (citations and quotation marks omitted). Any documentary evidence submitted by the parties must be considered "in a light most favorable to the nonmoving party." *Snead*, 294 Mich App at 354. "If no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Willett*, 271 Mich App at 45 (citations and quotation marks omitted). "If, however, a pertinent factual dispute exists, summary disposition is not appropriate." *Snead*, 294 Mich App at 354.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). "When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Ernsting*, 274 Mich App at 509-510. "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. at 509. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

"Under the governmental tort liability act, MCL 691.1401 *et seq.,* governmental agencies are immune from tort liability when engaged in a governmental function." *Nawrocki v Macomb Co Rd Com'n*, 463 Mich 143, 156; 615 NW2d 702 (2000). This immunity from tort liability "is expressed in the broadest possible language—it extends immunity to all governmental agencies for *all* tort liability whenever they are engaged in the exercise or discharge of a governmental function." *Id.* There are statutory exceptions to governmental immunity; but, these exceptions must be "narrowly construed." *Cannon Twp*, 311 Mich App at 415.

The statutory exception at issue in the present case is the sewage disposal system event exception, set forth in MCL 691.1416 through MCL 691.1419. In relevant part, MCL 691.1417(2) provides that "[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency." In other words, in crafting this exception, the Legislature "intended to provide limited relief to persons who suffer damages as a result of a 'sewage disposal system event.'" *Willett*, 271 Mich App at 46. In order to avoid governmental immunity under this exception, a claimant must show all of the following elements:

> (1) that the claimant suffered property damage or physical injuries caused by a sewage disposal system event;
>
> (2) that the governmental agency against which the claim is made is "an appropriate governmental agency";
>
> (3) that "[t]he sewage disposal system had a defect";
>
> (4) that "[t]he governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect";
>
> (5) that "[t]he governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect";
>
> (6) that "[t]he defect was a substantial proximate cause of the event and the property damage or physical injury";

(7) "reasonable proof of ownership and the value of [any] damaged personal property"; and

(8) that the claimant provided notice [to the governmental agency of the claim] as set forth in MCL 691.1419 [*Cannon Twp*, 311 Mich App at 415–416 (citations omitted).]

In this case, for purposes of this appeal, the parties dispute requirements (4) and (6).

We turn first to requirement (4), which requires plaintiff to show that the City "knew, or in the exercise of reasonable diligence should have known, about the defect." As defined by statute, the term "defect" refers to "a construction, design, maintenance, operation, or repair defect." MCL 691.1416(e). Under plaintiff's theory of the case, the defect in this case was the failure of the 8-inch pipe near manhole 15109. Importantly, City employees videotaped manhole 15109 as well as portions of the 8-inch pipe where the failure in question occurred. After viewing this footage, Bichler opined that, at the time the footage was taken, the 8-inch pipe was "on the verge of catastrophic failure." More fully, as set forth at the *Daubert*[1] hearing, Bichler explained his observations of the pipe as follows:

From what the camera showed, it was still outside of the pipe, but the picture swung over and I was able to get a few still shots of what the interior of the pipe looked like. Just inside the pipe, past the drop, there was a radial crack, which is a crack that goes around the pipe. That was obviously a very wide crack. On the left side of the pipe, there was a longitudinal crack that went approximately - - I would say about 18 inches, maybe two feet back to another either radial crack or wide joint. There was aggregate from outside of the pipe, maybe even possibly a piece of the pipe itself hanging down inside the pipe.

It was obvious by the pitch of the incoming pipe and the water that over a long course of time that the manhole had shifted and probably sank a little bit, cracking the pipe radially a long time ago. And just over the course of years, possibly even decades, the - - it got worse, just vibration, ground water coming up and, you know, raising and dropping. There was clearly evidence of continuous water, infiltration coming through the crack. The pipes were stained. There were rust stains on them, and that means that there's continuous water. It's always coming in.

So from - - and it also appeared that the pipe - - the top of the pipe had probably shifted over just a - - just a little bit. So that indicated to me that if I had been able to see the entire periphery of the pipe - - I already knew that there was a large crack on the left-hand side, and it had shifted a little bit. The pipe was out - - that tells me that over the other side, there is a corresponding crack. So you

---

[1] *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

-4-

have the whole basic top of that pipe was cracked, shifted, and ready to drop. And that's what I saw on the [video from] 28th of September, 2010.

Similarly, in his deposition testimony, Bichler explained, based on his observations of cracking and other symptoms in the video, that the defect in the 8-inch pipe had "started a long time ago and over the course of time got worse and worse" until, as shown in the September video, "the structural integrity of the pipe [was] gone." In other words, in September of 2010, several months before the ultimate break of the 8-inch pipe that caused the sewer backup in question on May 11, 2011, the City had actual video footage of that particular section of pipe showing longstanding cracks and other flaws so noticeable that an expert is willing to opine that the pipe was "on the verge of catastrophic failure."

Despite the City's possession of this video footage and the opinion of plaintiff's expert regarding the defective condition of the pipe as of September of 2010, the City offers two basic arguments to support its conclusion that it neither knew, nor in the exercise of reasonable diligence should have known, about the defect in the 8-inch pipe. First, the City notes that several of its employees have viewed the video in question and are willing to opine that there were no cracks or other defects visible in the video to suggest an impending "catastrophic failure."[2] However, we conclude that the structural integrity of the pipe is plainly an issue for experts familiar with sewer pipes, and at this stage the difference of opinion among those who have viewed the video merely evinces the existence of a question of fact regarding the condition of the 8-inch pipe as of September of 2010. See *Robins v Garg*, 276 Mich App 351, 363; 741 NW2d 49 (2007); *Lincoln v Gupta*, 142 Mich App 615, 627; 370 NW2d 312 (1985). Thus, the opinion of the City's employees regarding the pipe's condition as depicted in the video does not entitle the City to summary disposition.

Second, the City also argues that the statutory phrase "the defect" must be accorded a narrow construction, such that knowledge of cracks or other defects on the top of the pipe cannot be equated with knowledge of the break on the bottom of the pipe which actually caused the sewer event. In this respect, the City notes that the evidence from one of the workers excavating the failed pipe after the incident on May 11, 2011 establishes that the break on the 8-inch pipe was on the *bottom* of the pipe, on a portion of the pipe that was under sewage and thus not possibly visible in the video.[3] We recognize that MCL 691.1417(3)(c) and (e) refer to "*the* defect," and thus we agree with the proposition that the sewer disposal system event exception

---

[2] The various City employees contend that the video simply shows "crusting" typical of asbestos concrete pipe of that age. They contend that there were not any visible cracks, blockages or other irregularities.

[3] The pipe was destroyed during its removal, and Bichler was not at the site of the failure to personally observe the break in the pipe on May 11, 2011. The first-hand account of the pipe's condition on removal comes mainly from Chuck Thebo of Wyoming Excavators, Inc., who assisted with the repair of the sewer. According to Thebo, the pipe was "intact and still circular, upon its removal" and he noted no damage to the top of the pipe. However, he averred in an affidavit that the pipe "was eroded-through and thinned at the bottom of the pipe."

contemplates knowledge of the particular defect causing the sewer event, not simply some defect in the system. See *Robinson v Detroit*, 462 Mich 439, 461-462; 613 NW2d 307 (2000) (recognizing that "the" is a "definite article" with "a particularizing effect").

Nonetheless, even if we were to narrowly pinpoint "the defect" in this case as the crack on the bottom of the pipe, we find the City's argument that it could not have known of this defect to be unpersuasive for two reasons. First, as a factual matter, this argument ignores Bichler's description of "radial cracks" in the pipe. In particular, at his deposition Bichler noted a "radial crack, which is a crack, which goes around the circumference of the pipe." He specified that it "looked like the top of that [crack] was open" and that "the sides on the bottoms of both sides had evidence of slow leaks mineral deposit buildup." In other words, although it is true that sewage obscured the bottom of the pipe, Bichler described cracking around the visible circumference of the pipe's interior and, viewing the evidence in a light most favorable to plaintiff, a reasonable inference from Bichler's testimony is that damage extended under the sewage.

Second, the City's argument also fails to acknowledge that MCL 691.1417(3)(c) is satisfied, not only if the City actually knew of the defect, but also if, in the exercise of reasonable diligence, the City *should have known*, about the defect. In this regard, based on his observations of defects in the video, Bichler opined that action should have been taken to the repair the pipe, such as the use of a "cured-in-place sectional liner" that would have involved placement of a "brand new pipe, strong pipe inside the old pipe," whereby that the "old broken pipe" is glued to the new pipe "as part of the structure." Moreover, a City employee, Dan Simila, acknowledged in an affidavit that, had cracks been found in the pipe in September of 2010, a work order would have been issued, "including further inspection with a tractor or crawler camera, so that the problems could be remedied." In other words, viewing the evidence in a light most favorable to plaintiff, the video depicted catastrophic cracking in the area where the break occurred on the 8-inch pipe, and this visible damage warranted further inspection and repair in September of 2010. Given this evidence, reasonable minds could conclude that, in the exercise of reasonable diligence, the City should have discovered the erosion and cracking to the bottom of the 8-inch pipe. Overall, given Bichler's expert opinion, and viewing the evidence in a light most favorable to plaintiff, we agree with the trial court that plaintiff has set forth sufficient evidence to create a material question of fact in terms of whether the City knew, or in the exercise of reasonable diligence should have known, about the defect in the 8-inch pipe. See MCL 691.1417(3)(c). For this reason, the City was not entitled to summary disposition on this basis.

Turning to requirement (6), we also conclude that a question of fact remains in terms of whether the defect in the 8-inch pipe was a substantial proximate cause of the sewer event and the property damage to the apartment buildings. For purposes of the sewer disposal system event exception, a " '[s]ubstantial proximate cause' means a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(*l*). Relevant to this issue, Bichler opined that the structural integrity of the 8-inch pipe was compromised and that this caused the break resulting in the sewer backup and subsequent damage. He explained that the apartment buildings were on the two lateral lines closest to the break in the 8-inch main pipe, meaning that when the break occurred, sewage backed-up to those laterals and flooded the buildings.

Notably, the City concedes in its brief on appeal that the break to the bottom of the 8-inch pipe caused, or at least contributed to, the sewer back-up. In disputing the question of proximate causation, the City argues that plaintiff's causation theory must nevertheless fail because (1) Bichler did not identify the particular crack to the bottom of the pipe in the September video and (2) heavy rain also contributed to the sewer back-up. As we have discussed, the evidence is sufficient to support the conclusion that the City should have known about the defect on the bottom of the pipe and we find Bichler's causation evidence regarding the failed structural integrity of the pipe sufficient to survive a motion for summary disposition. Indeed, aside from deterioration of the pipe, no other explanation for the break in the pipe has been presented. In terms of whether rainfall also contributed to the back-up and how much of the damage can be attributed to rainfall, we note that plaintiff disputes this point and has in fact offered evidence in the form of eyewitness descriptions to establish that it was sewage—not rainwater—flooding the apartment buildings. On this record, a fact question remains in terms of whether the defect in the 8-inch pipe was a substantial proximate cause of the sewer event and resulting property damage. See MCL 691.1417(3)(e). Consequently, the City was not entitled to summary disposition on this basis.

Having resolved the City's appeal, we now turn briefly to plaintiff's cross-appeal. According to plaintiff, summary disposition should have been granted to plaintiff under MCR 2.116(C)(10) because the undisputed evidence unquestionably shows the presence of a defect in the 8-inch pipe which was a substantial proximate cause of the property damage in question. As we have discussed, questions of fact remain that preclude summary disposition, particularly in light of the City's evidence that the September video did *not* depict any defects. If the video showed a normal looking pipe, as the City's employees maintain, the City cannot have known of any defect and there is no basis for Bichler's causation testimony. Likewise, the parties dispute whether rainfall contributed to the property damage and, if so, how much of the damage may be attributed to rain. Because questions of fact remain, the trial court properly denied plaintiff's motion for summary disposition.

Affirmed, but remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering